O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DBEST PRODUCTS, INC., et al.<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>STAPLES, INC., et al.,<br><br>　　　　Defendants.<br>_____ | ) Case No. CV 07-4895 ODW (MANx)<br>)<br>)<br>) ORDER GRANTING<br>) DEFENDANTS' MOTION FOR<br>) SUMMARY JUDGMENT AND<br>) DENYING AS MOOT PLAINTIFFS'<br>) MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>)<br>) |

**I.　INTRODUCTION**

These motions for summary judgment arise from Defendants Staples, Inc.'s and Staples the Office Superstore, LLC's (collectively "Staples") alleged infringement of Plaintiffs' U.S. Patent No. 7,066,476 ("the '476 Patent") (filed Oct. 22, 2002) (issued June 27, 2006). Factually, Plaintiffs Dbest Products, Inc. and Richard Elden (collectively "Plaintiffs") allege that Staples sells an infringing wheeled push cart with detachable cover/seat.

Staples argues, as a counterclaim to the underlying infringement claim, that the '476 Patent should be found invalid on multiple grounds and thus moves for summary judgment. For the reasons set forth below, Defendants' Motion for

Summary Judgment of Invalidity and Unenforceability is GRANTED, and Plaintiffs' Motion for Summary Judgment of Infringement and Validity is DENIED as moot.

## II. FACTS

Plaintiff Richard Elden first filed his application for the '476 Patent on October 22, 2002. (*See* '476 Patent, title page.) The '476 Patent is directed to a molded plastic lid that fits over the opening of a carrying box on a two-wheeled cart to serve as a cover and a seat. (*See id.*, abstract.) When the lid is not acting as a cover/seat on top of the carrying box, it can be attached to the front of the box for storage and transport. (*Id.*) Specifically, the '476 Patent claims a combination cover and seat with protrusions that are configured to allow the cover/seat to attach to the front side of a carrying box using a "tight friction fit."

Defendant Staples manufactures and sells a push cart with a cover/seat that is nearly identical to that which is described in the '476 Patent. The main difference between the two push carts is that Plaintiffs' cover/seat secures to the front of the cart using a "tight friction fit" whereas Defendants' cover allegedly uses a "snap fit." (SUF[1] 1.)

Prior to Plaintiff Elden's filing of his patent application, another inventor, Darren Kady, filed an application for a patent entitled "Accessories for a Collapsible Rolling Caddy" ("the Kady Patent") (U.S. Patent No. 7,147,243) (filed July 3, 2002) (issued Dec. 12, 2006). The July 2002 filing relates back to previous filings made on August 11, 2001 and May 17, 2001. (Kady Patent, 1: 4-10.) The Kady Patent includes a cover/seat for a two-wheeled collapsible cart. The lid mounts to the cart using hinges that allow the lid to be flipped to either the top

---

[1] The Courts cites to the Statement of Uncontroverted Facts ("SUF") filed in support of Defendants' Motion for Summary Judgment.

cover/seat position or to the front panel of the cart during transport and storage.

The Kady Patent's commercial embodiment is known as the Packster. Plaintiff Elden and his patent attorney knew of the similarities between the Packster and the '476 Patent before they filed their patent application, and they concede that it is prior art. (SUF 22, 43, 76.)  Yet, they did not disclose it to the Patent and Trademark Office ("PTO") at the time of filing.  (SUF 24, 77.)

Additionally, prior to the PTO's issuance of the '476 Patent, it became abandoned on May 3, 2004 after Plaintiffs failed to respond within three months to a February 2, 2004 Office Action that rejected the patent claims.  (SUF 52; *see also* Letter from PTO Examiner Retta Williams to Donald Meeker (Feb. 8, 2006).)  On January 20, 2006, Plaintiff Elden's patent attorney, Donald Meeker, sent the PTO a petition for revival of his patent application stating that the abandonment was unintentional, without further explanation.  (SUF 51 and Cotta Decl., Ex. F.)  On February 8, 2006, the PTO sent Mr. Meeker a letter stating that his revival petition was granted.  Plaintiffs' patent officially issued on June 27, 2006.  *See* Letter from PTO Examiner Retta Williams to Donald Meeker (Feb. 8, 2006).

**III.   DISCUSSION**

    A.   <u>Legal Standard: Summary Judgment</u>

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tarin v. County of L.A.*, 123 F.3d 1259, 1263 (9th Cir. 1997), *superseded by statute on other grounds as stated in Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 n.2 (9th Cir. 2001).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24

(1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Only genuine disputes—where the dispute is over facts that might affect the outcome of a suit under the governing law and allow a reasonable jury to return a verdict for the nonmoving party—can preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (noting that the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor).

Where the moving party bears the burden of proof at trial, the moving party must present evidence, which if uncontroverted, would entitle it to prevail. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). Once the moving party has established a prima facie case, the non-moving party must produce evidence to contradict it in order to survive summary judgment. *Celotex Corp.*, 477 U.S. at 323-24; *see also Anderson*, 477 U.S. at 248.

B. <u>Analysis</u>

Defendants raise a number of arguments in their Motion for Summary Judgment, namely, noninfringement and patent invalidity based on intentional withholding of prior art from the PTO, abandonment, anticipation, and obviousness. The allegation of abandonment is quite compelling. Because of

evidentiary and factual disputes, however, the Court will not give a definitive ruling on the abandonment issue. The Court will briefly address and dispose of the anticipation argument. The Court will then focus its attention on the clearest premises for invalidity in this case–obviousness and inequitable conduct based on failure to disclose material prior art.

### 1.     Inherent Anticipation

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (citing *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987)). "Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Id.* (citing *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)). "Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008). "[D]isclosure of each element is not quite enough–[the Federal Circuit] has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*.'" *Id.* at 1334-35 (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). While a prior art disclosure that "almost" meets the § 102 standard may render the claim invalid on obviousness grounds under § 103, it does not anticipate. *Sears, Roebuck & Co.*, 722 F.2d at 1548.

Here, the '476 Patent's "tight friction fit" is simply not inherent in the Kady Patent. As noted in *Sears, Roebuck & Co.*, showing that a prior art disclosure "almost" meets the § 102 standard is not enough to prove anticipation. *Id.* Therefore, while the '476 Patent may be made obvious because of what the Kady

5

Patent specification teaches and suggests, the Kady Patent does not inherently anticipate what is claimed in the '476 Patent.

### 2. Obviousness

An issued patent is presumed valid. 35 U.S.C. § 282. To overcome this presumption, the party challenging a patent's validity must prove the facts that establish invalidity by clear and convincing evidence. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003). According to 35 U.S.C § 103(a), a patent is invalid if the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex, Inc. et al.*, 550 U.S. 398, 127 S.Ct. 1727, 1729 (2007). Further, obviousness at the time of the invention can be shown if "a person of ordinary skill in the art would have had reason to attempt to make the composition or device, or carry out the claimed process, and would have had a reasonable expectation of success in doing so." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).

The Supreme Court has provided a framework for applying § 103, noting that "[w]hile the ultimate question of patent validity is one of law, the § 103 condition . . . lends itself to several basic factual inquiries." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966) (internal citations and quotes omitted). Under § 103: (1) the scope and content of the prior art are to be determined; (2) differences between the prior art and the claims at issue are to be ascertained; and (3) the level of ordinary skill in the pertinent art resolved. *KSR*, 127 S.Ct. at 1729-30. "Against this background the obviousness or nonobviousness of the subject matter is determined." *Id.* at 1730. In addition, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances

surrounding the origin of the subject matter sought to be patented." *Id.* As indicia of obviousness or nonobviousness, these inquiries have relevancy. *Id.*

In addition, the Federal Circuit has employed a "teaching, suggestion, or motivation" test (the "TSM test"), "under which a patent claim is only proved obvious if the prior art, the problem's nature, or knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings." *KSR*, 127 S.Ct. at 1730 (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-24 (Fed. Cir. 1999)). The TSM test can be applied as a "general principle," but not as a "rigid rule," to aid courts in determining obviousness. *Id.* at 1741. The Supreme Court further emphasized the need for courts to value "common sense" over "rigid preventative rules" when analyzing the obviousness inquiry. *Id.* at 1742-43; *see also Leapfrog Enter., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) ("[a]n obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case.").

### a. The Scope and Content of the Prior Art

First, it is important to note that although the Kady Patent did not issue until after the '476 Patent, it is prior art under 35 U.S.C. § 102(e)(2), because the Kady Patent was filed before the filing of the '476 Patent.[2] Further, it is undisputed between the parties that the Kady Patent is in fact prior art. (SUF 76); *see also Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003) (noting that "[v]alid prior art may be created by admissions of parties.").

To determine the relevancy of prior art, the Court must first determine if the prior art reference is within the scope of the inventor's endeavor. *See In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A. 1979). If it is not, the court applies a second test to

---

[2] 35 U.S.C. 102(e)(2) states, "[a] person shall be entitled to a patent unless . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."

determine if the nature of the problem confronting the inventor is within the scope of the prior art. *Id.* The scope of a prior art must be analogous to the asserted patent at issue. *See In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992). A prior art is analogous if it is from the same "'field or endeavor,' even if it addresses a different problem, or, [is] not within the same field—if the [prior art] reference is 'reasonably pertinent' to the particular problem with which the inventor is involved." *In re Conte*, 36 F. App'x. 446, 450 (Fed. Cir. 2002) (citing *In re Clay*, 966 F.2d at 658-59).

Here, there is no question that the Kady Patent is from the same "field or endeavor" as the '476 Patent. Contextually, the patents pertain to many of the same issues. Both patents include a plastic, molded cover/seat for a collapsible rolling carrying box that can be used as a lid and/or seat when on top of the box, and the covers can be placed on the front of the box during transport and storage. The Kady Patent pertains to more complex issues such as multiple compartments inside the cart and accessories that attach to the cart, but both specifications as they relate to the cover/seat are similar.

Additionally, the Kady Patent addresses a variety of improvements to a push cart whereas the '476 Patent is quite simple. The '476 patent deals solely with a lid/seat for a rolling cart. The specification for the '476 Patent explains its purpose by noting, "[a] number of prior art patents have addressed the problem of providing a seat for a wheeled cart, which might also serve as a cover in some cases. None have provided a convenient place for attaching the cover to another portion of the cart for transporting it when it is not being used as a cover seat." ('476 Patent, 1: 33-38.)

The above assertion lays out the primary goal of the '476 Patent. The assertion itself, however, is clearly not true. The Kady Patent is prior art that provides a convenient place for attaching the cover to another portion of the cart

for transport. Specifically, the Kady Patent's specification states, "[t]he lid, as can any lid design disclosed herein, can be secured to the front panel and back panel through use of magnets, snap locks, Velcro, or other methods." (Kady Patent, 10: 32-35.)

There is no material issue of fact in dispute pertaining to the relevancy of the prior art. The Court finds that the Kady Patent constitutes relevant prior art because it is "reasonably pertinent" to the problem that the inventor, Richard Elden, is attempting to solve. In sum, the prior art addresses the problem of securing the cover/seat to the front of the cart and *suggests* the "use of magnets, snap locks, Velcro, or other methods." Therefore, the Court's inquiry pertaining to the scope of the prior art tips in favor of invalidating Plaintiffs' '476 Patent.

A point that further supports invalidity is the fact that the PTO did not consider the most pertinent prior art when issuing the '476 Patent. (*See* '476 Patent, title page.) This is surprising to the Court considering that even a brief glance at the Kady Patent's title page illustrates that it is far more similar to the '476 Patent than the other prior art that was disclosed to the PTO. Further, the Supreme Court has noted that the rationale underlying the presumption of validity seems "much diminished" when the PTO does not consider the most pertinent prior art. *KSR*, 127 S.Ct. at 1745.

                    *b.*    *Differences Between the Prior Art and the Claimed Invention*

Under the second prong of the *Graham* analysis, differences between the prior art and the claims at issue should be determined from the vantage point of the hypothetical person with ordinary skill in the art. *See Graham*, 383 U.S. at 17-18; *Velander v. Garner*, 348 F.3d 1359, 1363-64 (Fed. Cir. 2003). "Differences between prior art and the claimed invention are 'ascertained by interpretation of the *teachings* of the prior art and the claims of the patent.'" CHISUM ON PATENTS, §

9

5.03[5], 5-239 (2003) (emphasis added).

The Federal Circuit has expressed the importance of referring to the actual claims in defining an invention: "The claims of the patent provide the concise formal definition of the invention. . . . Courts can neither broaden nor narrow the claims to give the patentee something different than what he [or she] has set forth." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988) (citing *Autogiro Co. of Am. v. U.S.*, 384 F.2d 391, 395-96 (Ct. Cl. 1967)). Therefore, the Court will first look to the claims of the patent-in-suit, to determine if there are meaningful differences between the patent claims and the prior art.

Here, Plaintiffs concede that the Kady Patent discloses all but five limitations of the '476 Patent. (SUF 80.) Thus, the only dispute concerns whether the following limitations are disclosed or rendered obvious by the Kady Patent:

- "the rigid planar surface fitting securely thereon in a first position over the top opening to serve as a cover and a seat on top of the carrying box." (Claims 1 and 5.)

- "the rigid planar surface having at least two protrusions on a bottom surface, the protrusions configured to engage the hand hole on the front side of the carrying box with a tight friction fit to enable the rigid planar surface to be secured to the front side of the carrying box with the protrusions engaging the hand hole on the front side of the carrying box with a tight friction fit in a second position for securing the rigid planar surface to the front side of the carrying box for storage and transporting" (Claims 1 and 5.)

- "so that the rigid planar surface can remain attached to the front side of the carrying box when it is folded flat" (Claim 5.)

- "The combination cover and seat of claim 1 wherein the rigid planar surface further comprises an encircling flange which extends around the top opening of the carrying box and the flange has corner protrusions which engage the exterior surfaces of the carrying box at the corners to secure the rigid planar surface over the carrying box opening." (Claim 3.)

- "The combination cover and seat of claim 1 wherein the rigid planar surface is formed of molded plastic with a waffle pattern on

10

>>a bottom surface for sufficient strength to enable a person to sit on the rigid planar surface." (Claim 4.)

(SUF 80.)

Because of some overlap within the above five limitations, the disputes can be broken down into three key limitations of the '476 Patent. Plaintiffs first argue that the concept of having protrusions on the cover engaging the front side hand hole of the cart using a tight friction fit is a unique invention. (Claims 1 and 5.) The second innovation that Plaintiffs argue is unique pertains to the cover that contains an exterior flange allowing it to fit the opening of the carrying box so that the cover/seat is securely retained on the top of the carrying box. (Claims 1, 3, 5.) The third element that Plaintiffs argue is unique is the waffle pattern on the underside of the cover to give it increased strength. (Claim 4.)

With regard to the first dispute, the primary focus is on the language "tight friction fit." In the claim construction order, the Court construed the claim as follows:

>>Protrusions that enable the cover to be secured to the front side of the carrying box solely by means of the tightness created by protrusions and the sides (or walls) of the hand hole rubbing against one another. In order to be a "tight" friction fit, the cover must be affixed such that it does not detach when firmly secured to the front during storage and transport.

(*See* Court's November 19, 2008 Order on Claim Construction.)

Plaintiffs argue that the Kady Patent specification discloses a hinged lid that hinges up to act as a cover/seat and hinges down to the front of the cart for transport and storage. Plaintiffs therefore argue that their "tight friction fit," as a way to affix the lid to the front of the cart, is a unique innovation. Defendants point out that the Kady Patent discusses other methods to attach the lid to the front of the box. This is true. The Kady Patent specification states, "[t]he lid, as can any lid design disclosed herein, can be secured to the front panel and back panel through use of magnets, snap locks, Velcro, or other methods." (Kady Patent, 10:

32-35.)

The Kady Patent does not specifically disclose a "tight friction fit" as a method for securing the lid to the front panel. However, this is where the "common sense" aspect of the obviousness inquiry comes into play. *See KSR*, 127 S.Ct. at 1742-43. The Kady Patent suggests "magnets, snap locks, Velcro, or other methods." This language teaches and suggests there are multiple ways that an inventor might secure the lid to the front of the box. It seems commonsensical that using protrusions to secure the lid to the hand hole, as was done in the '476 Patent, would be an obvious next step for someone of ordinary skill in the art. Further, using protrusions to secure the cover to the front of the box via a tight friction fit is an obvious variation of the Kady Patent's disclosed methods.

With regard to the second limitation pertaining to flanges on the cover, the parties agreed in preparation for the claim construction hearing that the limitation should be construed to mean: "In a first position, the rigid planar surface (i.e., the cover) fits over the top opening of the carrying box so that the cover is the proper size and shape to cover the top opening and rests in a stable condition so that the cover will not move off the carrying box when a person sits on the cover." (SUF 81.) It was also agreed that the phrase "rigid planar surface" should be construed to mean "A lid having a flat or level surface that has a fixed outer shape." (SUF 82.)

First, this limitation in dispute is not necessarily critical to a finding of obviousness. Plaintiffs state clearly in the specification for the '476 Patent that other prior art patents have addressed the problem of putting a seat/cover on a wheeled cart. (*See* '476 Patent, 1: 33-38.) Second, the Kady Patent states that the lid of the caddy "is preferably manufactured with sufficient strength to enable the container to be used as a seat." (Kady Patent, 4: 56-60.)

A difference between the two patents, as Plaintiffs point out, is that Claim 3

of the '476 Patent describes a lid with an "encircling flange" which extends and engages the top of the carrying cart to secure the lid to the cart whereas the lid described in the Kady Patent merely sits loosely without flanges on top of the cart. This difference is not significant, however, since the idea of using a lid with flanges that fit over a box is not exactly novel. Further, the agreed claim construction only states that the lid fits over the box so as not to move off of the box when someone sits on it. Thus, this second disputed limitation is disclosed by the Kady Patent and otherwise does not negate the Court's finding of obviousness.

The final limitation that Plaintiffs allege is unique is the waffle pattern on the underside of the cover to give it increased strength described in Claim 4 of the '476 Patent. The parties have agreed that "waffle pattern" should be construed as "[h]aving a grid-like or crisscrossed pattern." (SUF 93.) The Court need not look beyond the illustrated figure on the title page of the Kady Patent to see that a grid-like or waffle pattern was used. Further, the Kady Patent teaches that the lid "is preferably manufactured with sufficient strength to enable the container to be used as a seat." (Kady Patent, 4: 57-60.)

After considering the differences between the '476 Patent and the Kady Patent asserted by Plaintiffs, it is clear that the Kady Patent fairly "suggests" the same structure and function as the claimed limitations in the '476 Patent. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1551 (Fed. Cir. 1983). Therefore, it appears that the patent-in-suit should be invalidated as obvious.

          c.    *The Level of Ordinary Skill in the Art*

To determine the level of ordinary skill in the art, courts must consider the educational level of the inventor, the educational level of those who work in the relevant industry, and the sophistication of the technology involved. *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991).

First, the Court will look to the educational level and experience of the

inventor of the patent-in-suit, Mr. Richard Elden. In 1998, Mr. Elden obtained a Bachelor of Arts degree in Communication and a minor in Business Administration from the University of Southern California. He also obtained a Master's Degree in Business Administration from Pepperdine University in 2005. Since the mid-1990s, Mr. Elden's work experience has almost exclusively involved sales and marketing. From examining Mr. Elden's resume, it does not appear that he has any specific engineering or design education or experience in plastics.

Second, despite Mr. Elden's lack of experience in the art, Defendants' expert, Mr. Roy Hammett, states that "a person of ordinary skill in the field of crate design is a person with an educational background in mechanical engineering (or equivalent industry experience) and 3-4 years of experience in plastic product design." (Expert Report of Roy Hammett at 4.)

The Court agrees with Defendants' expert, Mr. Hammett, as to what constitutes a person having ordinary level of skill in the art. In support of this finding, Mr. Hammett claims to have received a Higher National Certificate in Mechanical Engineering from Luton and South Bedfordshire College in Luton, England and thirty years of experience working in the field of plastic injection molded products. (*See* Expert Report of Roy Hammett at 2.) Mr. Hammett also claims to be the sole inventor on 21 U.S. patents and co-inventor on 11 others, including many patents on products requiring plastic injection molding. (*Id.*)

Using Mr. Hammett's expert opinion, Mr. Elden's background and experience, and the relatively unsophisticated nature of the patent-in-suit, the Court finds that the a person having ordinary level of skill in the art to be a hypothetical person in the field of crate design with an educational background in mechanical engineering (or equivalent industry experience) and 3-4 years of experience in plastic product design.

Lastly, the Court feels that the design of a plastic box with a lid/seat is

relatively unsophisticated. Thus, based on the foregoing, the Court concludes that a person of ordinary skill in the art would be able to implement the above-mentioned predictable variations from the Kady Patent and other prior art to develop that which was claimed in the '476 Patent.

### d. Secondary Considerations

Such considerations as commercial success, long felt but unsolved needs, and the failure of others to invent are relevant to the obviousness inquiry. *Graham*, 383 U.S. at 17-18. However, these considerations do not control the obviousness inquiry. *See Richardson-Vicks v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1992) (citing *Newell Cos., Inc., v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988)). Instead, they assist the Court in ascertaining the extent of any objective indicia of non-obviousness.

Here, the parties have not raised any secondary considerations. The Federal Circuit has frequently stated that "secondary consideration evidence" such as commercial success, copying, and long-felt need does not necessarily overcome a strong showing of obviousness. *See Leapfrog*, 485 F.3d at 1162; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007); *Ryko Mfg. Co.*, 950 F.2d at 719-20. Therefore, the Court will not delve into secondary considerations because there has already been a strong showing of obviousness.

### 3. Inequitable Conduct: Failure to Disclose Material Prior Art

"Patent applicants owe a 'duty of candor and good faith' to the PTO." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Services, Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005) (citing 37 C.F.R. § 1.56(a) and *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). "A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive or mislead the PTO." *Id*. "Materiality and intent must be established by clear and convincing evidence and

15

then weighed to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Id.* (internal quotation marks and citations omitted); *see also Molins PLC*, 48 F.3d at 1178 ("One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO."). The ultimate determination of inequitable conduct is a matter committed to the discretion of the trial court. *Id.*

The Court has already established that Plaintiffs knew about the Packster, considered it to be prior art, yet did not disclose it to the PTO. (SUF 22, 24, 43.) The next inquiry, therefore, pertains to the materiality of the Packster.

In evaluating materiality, the Federal Circuit has consistently referred to the definition provided in 37 C.F.R. § 1.56. As defined in the current version of the rule, information is material to patentability when:

> [I]t is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b).

Most of the materiality discussed above regarding the Kady Patent can apply equally to the Packster prior art. As stated in the '476 Patent, Plaintiff Elden's goal was to "provide[] a convenient place for attaching the cover to another portion of the cart for transporting it when it is not being used as a cover seat." ('476 Patent, 1: 33-38.) Elden contends that no other prior art has addressed this problem. (*Id.*) However, Elden had already seen the Packster advertisement. (*See* Cotta Decl., Ex. H.) It is clear by looking at the Packster advertisement that it addresses a lid that is conveniently attached to the front of the cart for transport and storage. (*See id.*) This feature of the Packster refutes and is inconsistent with a position the

16

Elden took in asserting an argument of patentability. *See* 37 C.F.R. § 1.56(b)(2). Accordingly, the Packster was material to patentability.

Next, "[e]ven if an omission is found to be material, the omission must also be found to have been made with the intent to deceive." *Ferring B.V. v. Barr Laboratories, Inc.*, 437 F.3d 1181, 1190 (Fed. Cir. 2006). "Intent need not, and rarely can, be proven by direct evidence." *Merck & Co., Inc. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989). The Federal Circuit has held that "in the absence of a credible explanation, intent to deceive is *generally inferred* from the facts and circumstances surrounding a knowing failure to disclose material information." *Ferring*, 437 F.3d at 1191 (citing *Bruno Indep. Living Aids, Inc.*, 394 F.3d at 1354 (finding that where the patentee "has not proffered a credible explanation for the nondisclosure . . . an inference of deceptive intent may fairly be drawn in the absence of such an explanation.")). Similarly, "a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Id*. (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 n.11 (Fed. Cir. 1997). "[T]he question of intent is directed to the applicant's intent, not to the intent of the declarants. Thus, that the declarants may have had no intent to deceive is entirely irrelevant." *Id*. The question is whether the applicant (here Elden) had such an intent.

Here, the Court has thoroughly examined Plaintiff Elden's declaration. He states that he did not consider the Packster to be relevant because the lid would have "flipped and flopped" in the open or front position. Plaintiff Elden also states that he merely relied on his patent attorney's expertise when deciding not to disclose the Packster to the PTO. The Court, however, finds Plaintiff Elden's explanations to be completely incredible. When looking at the Packster

advertisement, it is abundantly clear that the Packster illustrates a convenient method for storing the lid on the front of the cart–the primary goal of the '476 Patent.

In addition, Defendants have pointed to a damaging email sent by Elden to his patent attorney, Mr. Meeker. In the email Elden accused Mr. Meeker of leaving a "paper trial" that led a party in a prior lawsuit to believe Mr. Meeker "purposefully withheld information with an intent to deceive the patent office." (SUF 45.) While the underlying context of the email is disputed by the parties, it nonetheless appears suspicious. In sum, Plaintiffs have presented no credible evidence to explain the nondisclosure of the Packster prior art. Therefore, considering the surrounding facts and circumstances, the Court is left with no choice but to generally infer that Plaintiff Elden acted with deceptive intent when he failed to disclose the Packster to the PTO.

When deeming Plaintiffs' patent unenforceable, the Court must weigh the materiality and intent "in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable." *Ferring*, 437 F.3d at 1186. Given the blatant similarities between the Packster and the '476 Patent, the Court finds that Elden's conduct was culpable. Therefore, the '476 Patent is held unenforceable.

## IV. CONCLUSION

Based on the above analysis, Defendants have proven invalidity (obviousness) by clear and convincing evidence. The Court also finds that the '476 Patent is unenforceable based on Plaintiffs' inequitable conduct of withholding material prior art from the PTO. Accordingly, Defendants' Motion for Summary Judgment on the grounds of Invalidity and Unenforceability is GRANTED, and Plaintiffs' Motion for Summary Judgment of Infringement and Validity is DENIED as moot. Defendants are to lodge a Proposed Judgment within 14 days of the date of this order.

DATED: January 29, 2009

_____
Hon. Otis D. Wright II
United States District Judge